FULMER, Judge.
 

 Appellants, Foxfire Properties, LLC (“Foxfire Properties”), and Sugar Loaf Environmental Holdings, LLC (“Sugar Loaf”), challenge an order denying their motion to compel arbitration. We reverse because we disagree with the trial court’s intei’pretation of the arbitration clause at issue.
 

 The Foxfire Owners Association, Inc. (“the Owners Association”), represents the homeowners in the Foxfire Subdivision. In conjunction with the subdivision development, a 188-acre golf course, known as Foxfire Golf Course, was constructed next to the subdivision. In 2000, Foxfire Golf Course wanted to rezone a vacant parcel it owned which adjoined the golf course. The Owners Association lodged an objection to the rezoning. Foxfire Golf Course and the Owners Association thereafter negotiated a settlement, under which it was agreed that the Owners Association would not oppose the rezoning petition and if the rezoning was granted, Foxfire Golf Course would restrict the 188-acre golf course property to golf course and country club uses. The rezoning petition was granted, and Foxfire Golf Course and the Owners Association signed and recorded a Covenant and Restriction in 2002. Thereafter, the rezoned parcel was developed into a residential subdivision. The golf course continued to operate as a golf course and country club.
 

 In July 2006, Foxfire Golf Course sold one-half, approximately ninety-five acres, of the golf course property to Foxfire Properties. At the same time, Foxfire Golf Course leased the remaining half of the golf course property to Sugar Loaf for a period of ten years. Foxfire Properties and Sugar Loaf closed the golf course on the day of purchase. In October 2006, Foxfire Golf Course assigned the obligations of the Covenant and Restriction to Foxfire Properties. Foxfire Properties agreed in the assignment to fully and properly perform all of Foxfire Golf Course’s obligations under the Covenant and Restriction.
 

 Paragraph 2 of the Covenant and Restriction contains a Savings Clause which describes four circumstances which may result in the release of the Covenant and Restriction, two of which are relevant here, paragraphs 2(a) and 2(b).
 

 2.
 
 Savings Clause ...
 
 [T]he Covenant and Restriction shall be automatically released and terminated and shall be of no further force or effect in the event any of the following events or circumstances shall occur[.]
 

 (a) New governmental laws, statutes, ordinances, rules or regulations or existing governmental laws, statutes, ordinances, rules or regulations (collectively “governmental restrictions”) as subsequently applied to the Golf Course Property shall effectively prohibit the use of the Golf Course Property for public or private country club, golf course and related recreational and accessory purposes or shall make such uses no longer economically feasible....
 

 (b) The continued use and operation of the Golf Course Property for country club, golf course and related recreational and accessory uses and purposes only is determined by a three person panel of arbitrators not to be economically feasible. One of the arbitrators shall be appointed by Foxfire Golf Course, its successors or assigns, when and if it or they should believe that such use and operation if [sic] no longer economically feasible and shall notify the Foxfire Association thereof. One of the arbitrators shall be appointed by the Foxfire Associ
 
 *22
 
 ation within thirty (30) days after the appointment of the first arbitrator by Foxfire Golf Course. The third arbitrator shall be appointed by the first two arbitrators within thirty (30) days from the date the Foxfire Association designates its arbitrator. Upon the failure of the Foxfire Association to timely designate an arbitrator, then the first arbitrator shall appoint two (2) additional arbitrators to serve on the arbitration panel. The arbitration shall take place in Sarasota County, Florida, in accordance with the rules of the American Arbitration Association as they may be modified by mutual agreement between Foxfire Golf Course and Foxfire Association. The results of such arbitration shall be binding on both Foxfire Golf Course and the Foxfire Association, its successors and assigns and a final judgment shall be entered based upon the decision and award of the arbitrators[.]
 

 In December 2006, Foxfire Properties and Sugar Loaf filed suit against the Owners Association, seeking the cancellation and termination of the Covenant and Restriction under paragraph 2(a) on the basis that new governmental laws, statutes, ordinances rules or regulations either effectively prohibit the use of the property as a golf course or make such use no longer economically feasible.
 

 Foxfire Properties and Sugar Loaf did not seek or demand arbitration under paragraph 2(b) of the Savings Clause until March 2008, when they filed their motion to compel arbitration and motion to stay and continue trial. In June 2008, the trial court rendered its ruling denying the motion to compel on the basis that paragraph 2(b) of the Covenant and Restriction required Foxfire Properties and Sugar Loaf to continue operating the golf course.
 

 The trial court’s order states, in relevant part:
 

 Foxfire Properties continues to claim that the use and operation of the golf course is no longer economically feasible, but now seeks to have that issue determined through arbitration under paragraph 2(b).
 

 The Association argues that no arbi-trable issue exists because the golf course must continue to operate for 2(b) to apply. Foxfire Properties closed the golf course on July 10, 2006, the day of purchase.
 

 While both paragraphs 2(a) and 2(b) contain the element of economic feasibility, paragraph 2(b) also has language addressing the continuing operation of the golf course. The issue of economic feasibility is to be determined in an expedited manner by a panel of arbitrators, and not by Foxfire Properties. Because the golf course has not operated for almost two years, the task of determining economic issues became more difficult due to Foxfire Properties’ unilateral self-help decision to close. Although by continuing to operate the golf course while awaiting arbitration, a party could be operating at a deficit, by closing the golf course themselves prior to an arbitration decision, the opposing party could be irreparably harmed if the arbitration decision was ultimately that continuing to operate the golf course was economically feasible. The only fair and reasonable interpretation of this clause is that the course remain open until
 
 if,
 
 and when, an arbitration panel decides otherwise.
 

 On appeal, Foxfire Properties and Sugar Loaf argue that the trial court erred in denying their motion to compel arbitration because the Covenant and Restriction did not place an affirmative obligation on them to operate the property as a golf course and that it was therefore error to impose a continuing obligation as a condition prece
 
 *23
 
 dent to invoking paragraph (2)(b). They also argue that the trial court read language into the Covenant and Restriction that does not exist in order to find that paragraph 2(b) was applicable only if the property was still being used as a golf course. They argue that the court’s ruling renders an unreasonable result because it requires them to continue operating the golf course pending arbitration even if it is operating at a deficit. They argue that to the extent that the trial court determined that they impliedly waived their right to arbitrate under paragraph 2(b), this was error because the law favors arbitration.
 

 The Owners Association responds that this court should affirm if there is substantial competent evidence to support a waiver of arbitration. It argues that the arbitration clause is crafted to apply only in those circumstances where the golf course is open and the continued use and operation of the golf course is no longer economically feasible. It ai'gues that the fact that the phrase “continued use and operation” only appears in the arbitration provisions of the Savings Clause is significant. It argues that Foxfire Properties and Sugar Loaf treat the phrase “continued use and operation” as irrelevant. It contends that paragraph 2(b) permits the economic feasibility to be determined in an expedited manner by arbitration while the course continues to operate, which protects the Owners Association from unilateral closure before a determination is made. Further, the Owners Association contends that the trial court did not address the issue of whether the Covenant and Restriction creates an affirmative duty to operate a golf course and that this issue was not argued in the trial court.
 

 On the subject of waiver, the Owners Association argues that the relevant time frame to determine economic feasibility was before the golf course closed in July 2006. It asserts that Foxfire Properties and Sugar Loaf waived arbitration by unilaterally closing the golf course and electing to file suit under paragraph 2(a) and by opposing arbitration and stipulating that they were not seeking arbitration under paragraph 2(b) in February 2008. It argues that the conduct of Foxfire Properties and Sugar Loaf is inconsistent with the demand for arbitration they made in March 2008.
 

 Foxfire Properties and Sugar Loaf reply that the Owners Association has not directed this court to any language which would support the conclusion that Foxfire Properties and Sugar Loaf are required to keep open a golf course. They assert that while there is no doubt that the Covenant and Restriction restricts the use of the property, nothing compels them to use the property. Therefore, they contend that operation of the golf course cannot be a condition precedent to seeking arbitration under paragraph 2(b). Further, they dispute that they have waived their right to arbitrate under paragraph 2(b) because they claim this is the first time that issues relative to paragraph 2(b) have been before the trial court.
 

 We disagree with the trial court’s interpretation of paragraph 2(b) of the Savings Clause because while it seems that this provision contemplated the continued use of the property as a golf course, there is nothing in the provision that indicates that the provision is ineffectual if the golf course is unilaterally closed. We accept the argument that the Covenant and Restriction works as a restriction on the use of the property but does not create an affirmative duty to operate a golf course. The trial court’s order is based on the plain language of the Covenant and Restriction. However, the trial court seems to have added language to arrive at the conclusion that the golf course had to re
 
 *24
 
 main open in order for Foxfire Properties and Sugar Loaf to utilize the provisions of paragraph 2(b).
 

 We reject the waiver arguments because we do not construe the Covenant and Restriction to impose waiver of arbitration as a penalty for unilateral closure of the golf course, and we cannot say on this record that procedurally Foxfire Properties and Sugar Loaf waived their right to invoke paragraph 2(b). It was argued in the trial court that paragraph 2(b) was a separate provision from paragraph 2(a) and that the ongoing suit under paragraph 2(a), for which a jury trial was scheduled, could proceed separately from any arbitration that occurred under paragraph 2(b).. It appears that the trial court agreed with this argument. In any event, the tidal court did not make a finding as to waiver based on the conduct of the litigation, and it would be improper for this court to do so in the first instance.
 

 Reversed and remanded for further proceedings.
 

 NORTHCUTT, C.J, and VILLANTI, J., Concurs.